IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

---

CHARLES P. WOODS,

Plaintiff,

v.

DUNGARVIN WISCONSIN, LLC,

Defendant.

OPINION AND ORDER

25-cv-1021-wmc

---

Self-represented plaintiff Charles Woods has filed a complaint under 42 U.S.C. § 1983, alleging that his former employer, defendant Dungarvin Wisconsin, LLC, denied him a promotion and later terminated his employment in violation of the Due Process and Equal Protection Clauses of the Fourteenth Amendment and in retaliation for him exercising his First Amendment rights. (Dkt. #1.) Defendant moved to dismiss the complaint on the ground that it is a private corporation not acting under the color of state law, as required to bring constitutional claims under § 1983. (Dkt. #8.) In addition to opposing the motion to dismiss, plaintiff has moved to amend his complaint to add a Wisconsin common law claim for wrongful discharge (dkt. #17) and a race discrimination claim under 42 U.S.C. § 1981 (dkt. #26), both of which do not have a state action requirement. For the reasons below, defendant's motion to dismiss plaintiff's § 1983 claims will be granted. However, the court will grant plaintiff's motion to amend his complaint to add both a § 1981 race discrimination claim and a state common-law claim of wrongful discharge against defendant and order defendant to answer plaintiff's second amended complaint (dkt. #26-1), which is now the operative pleading in this case.

## ALLEGATIONS OF FACT[1]

Plaintiff Charles Woods, who is black resident of Eau Claire, Wisconsin, worked as a direct support professional in defendant Dungarvin Wisconsin, LLC's Vesta House from approximately September 2023, until his termination on November 21, 2025. Defendant operates residential facilities for individuals with developmental disabilities under contract and license with the State of Wisconsin, receives substantial state funding through Medicaid and other government programs, and is regulated by the Wisconsin Department of Health Services ("DHS"). According to plaintiff, defendant performs the public function of caring for vulnerable adults who are wards of the state under Wis. Stat. §§ 46.90 and 55.043, and serves as the state's investigative arm for care-related incidents.

In October 2024, plaintiff received an employee counseling report based on the undisclosed contents of a group text exchange, but that report was later removed from his personnel file by defendant's Regional Human Resources ("HR") Director, Sheri Butler, who determined that the program director had failed to resolve the workplace conflicts leading to the incident.

When a lead direct support professional ("DSP") position became available at Vesta House in late February 2025, defendant did not follow its standard practice of proactively offering the position to internal candidates with seniority. Unlike white employees who were approached about other promotions, plaintiff, who had three years seniority at Vesta House, saw the external posting and applied on his own on March 6, 2025, only to be told that the position was obsolete and may be on hold due to reduced resident numbers. However, the lead

[1] Unless otherwise indicated, the allegations of facts in plaintiff's second amended complaint (dkt. #26-1) are taken as true for purposes of screening.

DSP position actually had already been offered to an external candidate on February 27. After defendant's recruiter told plaintiff that the position had been filled, plaintiff filed a discrimination complaint with Regional HR Director Butler on March 18, 2025, and threatened to contact the Equal Employment Opportunity Commission ("EEOC").

On March 24, 2025, plaintiff reported to defendant's internal investigator, Hannah Ziebell, that two of his co-workers had engaged in inappropriate touching with a vulnerable female consumer. Ziebell did not investigate the report, but she passed it along to the Area Director, Kaci Sapinski, who also failed to open a formal investigation and did not discipline plaintiff's co-workers.

Meanwhile, on March 27, 2025, Investigator Ziebell confirmed that defendant's recruiter failed to contact plaintiff after he applied for the lead DSP position and that defendant's decision to fill the position externally before the posting closed was not a best practice. Even though the external candidate defendant selected over plaintiff failed to show up for training and was terminated as a no-show, defendant still did not offer the position to plaintiff after the external candidate's termination. While defendant subsequently offered plaintiff two other promotions, either the pay or a co-worker made those positions untenable for plaintiff.

When plaintiff later inquired about the vacancy for a Program Director position in or around March 2025,[2] he was told that he was not qualified because he had no supervisory experience, yet other white applicants interviewed for the position also lacked supervisory and leadership experience. Plaintiff requested training to become qualified, but none was ever provided.

---

[2] Although plaintiff's allegations are not clear, it appears that this was a different position from the earlier-posted, lead DSP position.

Also in the spring of 2025, defendant enforced against plaintiff a previously unenforced policy requiring male overnight personnel to have a female staff member present when a female consumer was in the house. The policy was applied only to plaintiff after he complained about his co-workers on March 24, 2025. However, after raising the issue of selective enforcement in May 2025, plaintiff was told it was a mistake and he was "grandfathered in."

Later, on July 31, 2025, plaintiff received a written warning for being late, despite him having called ahead and no other employee ever being written up under similar circumstances. Plaintiff refused to sign the warning the next day on the grounds that it was retaliatory and requested the written policy regarding lateness, but none was ever produced. Also in July 2025, defendant investigated plaintiff for an alleged code of conduct violation involving a female colleague, but the investigation concluded with no findings of wrongdoing. Ziebell also refused plaintiff's request for mediation and would not show him anything related to the incident besides his own statement.

Finally, in November 2025, defendant was initially charged with client abuse and neglect for arguing with a consumer on November 5, about whether the consumer was approved to self-administer his medication. However, the final decision instead found plaintiff liable for verbal abuse and intimidation of *staff*, apparently based on him acting in a "non-therapeutic manner" by yelling and swearing. Plaintiff was then terminated for "misconduct" on November 21, 2025, without further explanation or a last chance agreement, which had been offered to white employees who had engaged in serious misconduct in the past.

## OPINION

### I. Constitutional Claims

To state a claim under § 1983 for the violation of his rights under the First and

Fourteenth Amendments, plaintiff must allege that he was deprived of a constitutional right and that the deprivation was committed by a person acting under color of state law. *Am. Mfrs. Mut. Ins. Co. v. Sullivan*, 526 U.S. 40, 49-50 (1999); *Howell v. Wexford Health Sources, Inc.*, 987 F.3d 647, 653 (7th Cir. 2021). "Because § 1983 actions may only be maintained against defendants who act under color of state law, the defendants in § 1983 cases are usually government officials [i.e., state actors]." *London v. RBS Citizens, N.A.*, 600 F.3d 742, 746 (7th Cir. 2010). A non-governmental organization or its employee may be a state actor under § 1983 if there is a close enough connection between the state and the organization's or the employee's actions that those actions "may be fairly treated as that of the [s]tate itself." *Rodriguez v. Plymouth Ambulance Serv.*, 577 F.3d 816, 823 (7th Cir. 2009).

Plaintiff's allegations that defendant is under contract with and licensed by the State of Wisconsin, regulated by DHS, and received significant public funding through state Medicaid contracts and other government sources do not, on their own, plausibly suggest that defendant or its employees are state actors. "The mere fact that a business is subject to state regulation does not by itself convert its action into that of the State for purposes of the Fourteenth Amendment," *Jackson v. Metro. Edison Co.*, 419 U.S. 345, 350 (1974), nor does the "fact that a private entity performs a function that serves the public," *Wade v. Byles*, 83 F.3d 902, 905 (7th Cir. 1996). Indeed, the Supreme Court has expressly found that despite extensive state regulation and public funding, nursing homes for Medicaid patients are not state actors, especially so where the challenged action relates to an administrative decision about the day-to-day operation of the nursing home, as in this case. *Blum v. Yaretsky*, 457 U.S. 991, 1011-12 (1982) (plaintiffs failed to establish "state action" in the nursing homes' decisions to discharge or transfer Medicaid patients to lower levels of care, despite fact that State paid more than 90% of patients' medical expenses); *see also Rendell-Baker v. Kohn*, 457 U.S. 830, 840 (1982)

(citing same for holding that privately-operated school that fired employees was not state actor, despite receiving more than 90% of operating budget from public funds).

Plaintiff also alleges that the investigation that led to his termination was conducted pursuant to Wis. Stat. § 55.043, which he says mandates that facilities licensed by the State investigate and report incidents involving vulnerable adults. While that statute does require certain health care employees to *report* abuse, financial exploitation, neglect, or self-neglect of at-risk adults, contrary to plaintiff's allegations, the State delegates the *investigation* to a county agency and not a private health care provider such as defendant. Wis. Stat. §§ 55.043(1d), 1(m)(a), and (1r) (vers. eff. Dec. 8, 2023 through Apr. 9, 2026). Therefore, even if defendant terminated plaintiff during or after an investigation pursuant to § 55.043, it does not follow that the State, as opposed to defendant, was responsible for his termination. *Blum*, 457 U.S. at 1004 (Section 1983 only applies "when it can be said that the State is *responsible* for the specific conduct of which the plaintiff complains."); *Moose Lodge No. 107 v. Irvis*, 407 U.S. 163, 173 (1972) ("Our holdings indicate that where the impetus for the discrimination is private, the State must have 'significantly involved itself with invidious discriminations . . . for discriminatory action to fall within the ambit of constitutional prohibition.") (internal citation omitted). Accordingly, plaintiff's constitutional claims brought pursuant to § 1983 must be dismissed for his failure to satisfy the state action requirement.

## II. Motions to Amend

On March 25, 2026, the court entered a pretrial conference order informing plaintiff that the only way to amend his complaint was to file a motion with the court. (Dkt. #16, at 3; *see also* Fed. R. Civ. P. 15(a) (plaintiff must obtain leave of court to amend complaint after

certain time limits have passed).) Plaintiff filed his first motion to amend on March 30, seeking to add a wrongful termination claim based on the public policy exception to Wisconsin's employee-at-will doctrine (dkt. #17 (citing *Hausman v. St. Croix Care Ctr.*, 214 Wis. 2d 655, 667, 571 N.W.2d 393, 397 (1997)), and he then filed a second motion to amend on September 23, seeking to add a race discrimination claim under 42 U.S.C. § 1981 (dkt. #26).

Rule 15(a)(2) provides that leave to amend a complaint should be freely granted "when justice so requires," but the court may deny leave to amend when there is a "good reason" for doing so, such as "futility, undue delay, undue prejudice, or bad faith." *Life Plans, Inc. v. Sec. Life of Denver Ins. Co.*, 800 F.3d 343, 358 (7th Cir. 2015); *see also Foman v. Davis*, 371 U.S. 178, 182 (1962); *Allen v. Brown Advisory, LLC*, 41 F.4th 843, 853 (7th Cir. 2022). Amending a complaint is futile if the proposed amendment fails to state a claim for relief. *Runnion ex rel. Runnion v. Girl Scouts of Greater Chicago & Nw. Ind.*, 786 F.3d 510, 524 (7th Cir. 2015); *Gen. Elec. Cap. Corp. v. Lease Resol. Corp.*, 128 F.3d 1074, 1085 (7th Cir. 1997).

The court will address plaintiff's proposed new claims separately.

### A. Race Discrimination

Plaintiff alleges that defendant intentionally discriminated against him on the basis of race by refusing to promote him, selectively enforcing an overnight-staffing policy against only him, and terminating him on November 21, 2025, while treating similarly situated white employees more favorably. (Dkt. #26-1, at ¶ 77a-h.) He further alleges that defendant retaliated against him for complaining about race discrimination. (*Id.* at ¶ 78.)

Section 1981 protects "the equal right . . . to make and enforce contracts without respect to race." *Miao v. United Airlines, Inc.*, 164 F.4th 622, 625 (7th Cir. 2026) (quoting *Domino's Pizza, Inc. v. McDonald*, 546 U.S. 470, 474 (2006)). To state a claim under § 1981, plaintiff

must show that: (1) he is a racial minority; (2) defendant intended to discriminate on the basis of race; (3) the discrimination deprived plaintiff of one or more rights enumerated in § 1981, such as making a contract; and (4) but for race, plaintiff would not have suffered the loss of a legally protected right. *Black Agents & Brokers Agency, Inc. v. Near N. Ins. Brokerage, Inc.*, 409 F.3d 833, 837 (7th Cir. 2005); *see also Comcast Corp. v. Nat'l Ass'n of African American-Owned Media*, 589 U.S. 327, 341 (2020) (to prevail under § 1981, "plaintiff must initially plead and ultimately prove that, but for race, it would not have suffered the loss of a legally protected right" (emphasis added)). In addition, § 1981 encompasses claims of retaliation. *CBOCS W., Inc. v. Humphries*, 553 U.S. 442, 457 (2008).

Taking the facts asserted in plaintiff's amended complaint as true and construing them in his favor, plaintiff has plausibly alleged that defendant intentionally discriminated and retaliated against plaintiff because of his race, which interfered with his ability to contract for employment. *See Armstrong v. Browns Living, LLC*, No. 22-cv-329-wmc, 2023 WL 4053390, at *3 (W.D. Wis. June 16, 2023) (finding plaintiff's allegation of employment relationship with defendant "sufficient to plead a contractual basis for race discrimination under § 1981") (citing *Walker v. Abbot Lab'ys.*, 340 F.3d 471, 476 (7th Cir. 2003)).

Because this court finds that plaintiff's proposed addition of a race discrimination claim under § 1981 is not futile or brought in bad faith, and would not result in undue delay or prejudice at this early stage of the lawsuit, the court will grant plaintiff leave to amend his complaint to add this claim.

### B. Wrongful Termination

Under Wisconsin's employee-at-will doctrine, the general rule is that "an employer may discharge an employee for good cause, for no cause, or even for cause morally wrong, without

being thereby guilty of legal wrong." *Hartsuch v. Ascension Med. Grp.-N. Wisconsin, Inc.*, No. 20-cv-325, 2021 WL 3809908, at *3 (W.D. Wis. Aug. 26, 2021) (citing *Brockmeyer v. Dun & Bradstreet*, 113 Wis. 2d 561, 567, 335 N.W.2d 834, 837 (1983)). While certain state and federal statutes provide exceptions to this rule,[3] plaintiff does not rely on any of those exceptions, instead contending that defendant "committed the common-law tort of wrongful discharge, which applies when 'the discharge is contrary to a fundamental and well-defined public policy as evidenced by existing law.'" *Id.* (citing *Winkelman v. Beloit Mem'l Hosp.*, 168 Wis. 2d 12, 20, 483 N.W.2d 211, 214 (1992)).

"A claim for wrongful discharge was originally limited to situations in which the employee was fired after refusing an order that would violate public policy." *Id.* at 4 (citing *Bushko v. Miller Brewing Co.*, 134 Wis. 2d 136, 142, 396 N.W.2d 167 (1986)). However, the Wisconsin Supreme Court has since held that that an employee's "compliance with [a] specific legal mandate" or an "affirmative legal obligation" can also be protected under some circumstances. *Id.* (citing *Hausman v. St. Croix Care Ctr.*, 214 Wis. 2d 655, 667, 571 N.W.2d 393, 397 (1997) (extending wrongful discharge claim to protect nursing home employees who were fired after reporting abuse and neglect of residents to administrators)).

Here, plaintiff alleges that he performed an affirmative legal duty when he reported a co-worker's misconduct involving a vulnerable adult, after which defendant fired him. (Dkt. #26-1, at ¶¶ 73-74.) While plaintiff will bear the burden of *proving* that his dismissal violates

[3] For example, Title VII prohibits employers from depriving individuals of employment opportunities based on race, color, religion, sex, or national origin. 42 U.S.C. § 2000e-2(a)(2). However, plaintiff does not raise any such claim nor allege that he has exhausted his administrative remedies by following through with his threat to file charges with the EEOC and receiving a right-to-sue letter. *Chaidez v. Ford Motor Co.*, 937 F.3d 998, 1004 (7th Cir. 2019) (setting forth prerequisites for bringing Title VII claim); *see also Anderson v. United Airlines, Inc.*, 140 F.4th 385, 390 (7th Cir. 2025) (affirming dismissal of Title VII discrimination claim because plaintiffs failed to allege receipt of right-to-sue letter).

a clear mandate of public policy, *Kempfer v. Automated Finishing, Inc*., 211 Wis. 2d 100, 107-08, 564 N.W.2d 692, 696 (1997), his allegations plausibly suggest at this early stage of the case that he was fulfilling a "specific legal mandate" related to the protection of a vulnerable adult. Finding no futility, undue delay, undue prejudice, or bad faith, the court will permit plaintiff to amend his complaint to add a state common-law claim for wrongful discharge, over which this court may exercise supplemental jurisdiction. 28 U.S.C. § 1367(a).

ORDER

IT IS ORDERED that:

1) Defendant motion to dismiss plaintiff's constitutional claims under 42 U.S.C. § 1983 (dkt. #8) is GRANTED.

2) Plaintiff Charles Woods' motion to file a second amended complaint (dkt. #26) is GRANTED. The clerk of court's office shall file plaintiff's proposed amended complaint (dkt. #26-1) as a separate docket entry.

3) Plaintiff's motion to file a first amended complaint (dkt. #17) is DENIED as moot.

4) Defendant has November 4, 2026, to file its responsive pleading, in accordance with Fed. R. Civ. P. 12(a)(4).

Entered this 21st day of October, 2026.

BY THE COURT:

/s/

WILLIAM M. CONLEY
District Judge